United States District Court
Southern District of Texas
**ENTERED**
January 19, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 17-32186 |
| **UPLIFT RX, LLC**, *et al.*, | § § | CHAPTER 11 |
| Debtors. | § § | |
| **YVETTE AUSTIN SMITH,** | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 22-3275 |
| **BAKER & HOSTETLER, LLP,** | § § | |
| Defendant. | § § | |

## REPORT AND RECOMMENDATION TO WITHDRAW REFERENCE

The parties seek the District Court's withdrawal of this adversary proceeding's referral to the Bankruptcy Court. Through this adversary proceeding, Yvette Austin Smith, Trustee of the Alliance Health Liquidating Trust, alleges that Baker & Hostetler, LLP ("Baker"), Alliance's former outside counsel, aided and abetted Alliance's fraudulent business practices. The Trustee's claims arise primarily under non-bankruptcy law and are accompanied by jury rights. The parties have not consented to this Court's resolution of the lawsuit. They request that the District Court withdraw this proceeding's referral to this Court under 28 U.S.C. § 157.

Baker requests that the District Court withdraw the reference and adjudicate all matters, including pre-trial matters. The Trustee requests a recommendation that the District Court withdraw the reference for trial after the Bankruptcy Court adjudicates pre-trial matters. The Court agrees with the Trustee; the District Court should withdraw the reference once the case is ready for trial.

# BACKGROUND

Alliance Medical Holdings, LLC and its affiliate debtors owned and operated a national network of retail pharmacies.  (Case No. 17-32186, ECF No. 6 at 6–7).  Within 10 years of its incorporation, Alliance's success earned it national recognition as one of America's fastest-growing companies.  (Case No. 17-32186, ECF No. 6 at 6).  When it filed bankruptcy, Alliance's annual revenue exceeded $150 million.  (Case No. 17-32186, ECF No. 6 at 7).  In early 2017, the FBI stopped Alliance's growth in its tracks.  (Case No. 17-32186, ECF No. 6 at 8).  The FBI executed search warrants on Alliance, freezing Alliance's assets and business.  (Case No. 17-32186, ECF No. 6 at 8).  This raid precipitated Alliance's collapse as its banks declared Alliance in default under the terms of Alliance's loan obligations.  (Case No. 17-32186, ECF No. 6 at 9).  Within months, Alliance was in chapter 11 bankruptcy.

## I.   ALLIANCE'S "QUESTIONABLE BUSINESS PRACTICES"

A Department of Justice inquiry into Alliance's purchase of "secondary market diabetic testing strips" led to the FBI raid.  (Case No. 17-32186, ECF No. 1085 at 8).  In the diabetic testing strip industry, a patient's insurance generally dictates the price at which testing strips are sold.  (ECF No. 1 at 15).  Health plans generally cover the cost of test strips as a "pharmacy benefit" or a "durable medical benefit" (DME).  (ECF No. 1 at 15).  Testing strips covered by pharmacy benefits are sold to patients through retail pharmacies and may be sold to anyone (including patients without insurance).  (ECF No. 1 at 15).  In contrast, patients with DME insurance purchase testing strips from distributors who are contractually obligated only to sell test strips labeled as "Not For Retail Sale" ("NFR").  (ECF No. 1 at 15).

Manufacturers sell retail test strips for a higher price than NFR test strips.  (ECF No. 1 at 16).  Manufacturers then pay rebates to "pharmacy benefit managers" for retail test strips sold to

patients with pharmacy benefit insurance. (ECF No. 1 at 16). Manufacturers do not pay rebates for the lower-priced NFR test strips. (ECF No. 1 at 16). In addition to packaging and pricing differences, testing strips with different insurance benefits have different National Drug Codes ("NDCs"). (ECF No. 1 at 15). Insurers reimburse testing strip sellers (*e.g.*, pharmacies or DME distributors) based on the NDC the seller reports to the insurer. (ECF No. 1 at 16). That is, insurance plans cover specific NDCs; if an NDC is not covered by a plan, the insurer will not reimburse the seller. This reporting process is called adjudication. (ECF No. 1 at 16). Accuracy in the adjudication process is critical in the testing strip industry because pharmacy-benefit strips are reimbursed (or rebated) at much higher rates than NFR strips. (ECF No. 1 at 16–17).

The Trustee alleges that Alliance entities purchased NFR strips on the "gray market." (ECF No. 1 at 18). Alliance did not then sell the NFR strips to patients with DME insurance as required. (ECF No. 1 at 17–19). Instead, Alliance sold the NFR strips through its retail pharmacies to patients with pharmacy-benefit insurance. (ECF No. 1 at 17–19). When it came time to adjudicate claims for the sales, Alliance reported NDCs for retail strips to insurers. (ECF No. 1 at 18). Alliance's intentionally inaccurate reporting caused insurers to reimburse Alliance for the NFR strips as if Alliance had sold retail strips. (ECF No. 1 at 5, 7). Alliance thus received a significant profit on the NFR strips it sold because Alliance received the higher adjudication applicable to retail strip reimbursements. (ECF No. 1 at 5, 7).

## II. THE TRUSTEE'S CLAIMS

The Trustee asserts claims against Baker arising from Alliance's insurance schemes. Baker began representing Alliance in 2014. (ECF No. 1 at 21). The Trustee alleges that Baker knew of Alliance's scheme soon after beginning its representation. (ECF No. 1 at 21). Because Baker

knew of Alliance's questionable business model, the Trustee argues Baker was obliged to withdraw from its representation. (ECF No. 1 at 48).

Baker's allegedly wrongful conduct underlies the Trustee's nine claims against it:

(1) *Professional Negligence and Legal Malpractice* based on Baker's failure to adequately advise Alliance about the illegality and risks associated with Alliance's questionable business practices, (ECF No. 1 at 78–80);

(2) *Aiding and Abetting Breach of Fiduciary Duty* based on Baker's failure to adequately advise Alliance's officers and directors that Alliance's business practices were illegal, which led Alliance's officers and directors to breach fiduciary duties, (ECF No. 1 at 80–85);

(3) *Contribution* resulting from Baker's facilitation of Alliance's and its senior management's liability for "negligently, recklessly, and/or intentionally defrauding Test Strip Manufacturers," (ECF No. 1 at 85–86);

(4) *Avoidance and Recovery of Transfers* under 11 U.S.C. §§ 544, 548, and 550 based on Baker's receipt of legal fees for its representation of Alliance because that deficient representation was not for reasonably equivalent value, (ECF No. 1 at 86–88);

(5) *Objection to Post-Petition Claim of Baker and Turnover and/or Disgorgement of Fees* paid to Baker under 11 U.S.C. §§ 542 and 549 based on the "faithless servant doctrine," (ECF No. 1 at 88);

(6) *Aiding and Abetting Negligent and Fraudulent Misrepresentation* based on Alliance's submission of false and misleading statements to pharmacy-benefit insurers to secure reimbursement for testing strips sold, (ECF No. 1 at 88–90);

(7) *Fraud (Including Aiding and Abetting Fraud and Conspiracy to Commit Fraud)* based on Baker's role in Alliance's "knowing[] and intentional[]" sale of NFR strips as retail strips to improperly receive insurance reimbursements, (ECF No. 1 at 90–92);

(8) *Conspiracy to Violate Federal RICO* and (9) *Violation of Federal RICO* based on Baker's alleged participation in Alliance's "enterprise" of "racketeering activity" across state lines (*i.e.,* Alliance's scheme to defraud manufacturers and insurers through the sale of misidentified testing strips) (ECF No. 1 at 92–101).

The Trustee requests a jury trial on all issues and explicitly disclaims her consent to a jury trial before the Bankruptcy Court. (ECF No. 1 at 102).

Baker moved to dismiss the Trustee's complaint. (*See* ECF No. 31). Baker argues that the Trustee stands in the shoes of a fraudulent enterprise, and both federal and Texas law prevent pursuit of the claims against Baker. (ECF No. 31 at 2–3).

### III. PROCEEDINGS THUS FAR

Before it filed its motion to dismiss, Baker filed a motion for withdrawal of the reference. (ECF No. 18). The Trustee responded to the motion for withdrawal and filed a cross motion to withdraw the reference only when the case is trial-ready. (ECF No. 24). The Trustee does not oppose withdrawal of the reference, but requests that such withdrawal be conditioned on this Court's retention of the proceeding for all pre-trial matters. (ECF No. 24 at 2–3). The Court held a hearing and took the matter under advisement pending the District Court's decision on the Court's report and recommendation in *Shaprio v. Brown & Fortunado, P.C.* (*See* ECF Nos. 25; 27; Adv. Pro. No. 21-3936).

## JURISDICTION

The District Court derives its jurisdiction over this proceeding from 28 U.S.C. § 1334(b). This proceeding was referred to this Court under General Order 2012-06 consistent with 28 U.S.C. § 157(a). The majority of the Trustee's claims are not "core" proceedings identified in § 157(b)(2). Here, the parties seek the District Court's withdrawal of this proceeding. Section 157(d) commits to the District Court the decision to withdraw a bankruptcy proceeding. 28 U.S.C. § 157(d); FED. R. BANKR. P. 5011(a). Hence, the Court may only issue a report and recommendation to the District Court about whether this proceeding should be withdrawn.

## DISCUSSION

The nature of the Trustee's claims warrants withdrawal. District courts may refer bankruptcy cases and bankruptcy-related proceedings to bankruptcy judges. § 157(a). The ability

to withdraw these references complements district courts' referral power. § 157(d). Section 157(d) provides parties with a mechanism to request a reference's withdrawal. *Id.*

Section 157(d) requires the District Court to withdraw some proceedings and affords the District Court discretion to withdraw other proceedings. *Id.* The District Court *must* withdraw a proceeding if: (i) it involves "a substantial and material question of both Title 11 and non-Bankruptcy Code federal law"; and (ii) "the non-Code federal law has more than a de minimis effect on interstate commerce." *Benjamin v. United States (In re Benjamin)*, No. 17-33255, 2021 WL 3861615, at *2 (Bankr. S.D. Tex. Apr. 30, 2021) (quoting *U.S. Gypsum Co. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 145 B.R. 539, 541 (N.D. Tex. 1992)) (internal quotation marks omitted); *see also* § 157(d) ("The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.").

The District Court *may* withdraw proceedings "for cause." *Benjamin*, 2021 WL 3861615, at *3 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). The existence of "cause" for withdrawal depends on six considerations: "(i) promoting uniformity in bankruptcy administration; (ii) reduction of forum shopping and confusion; (iii) economical use of debtors' and creditors' resources; (iv) expediting the bankruptcy process; (v) the presence of a jury demand; and (vi) core versus non-core matters." *Id.* (citing *Holland*, 777 F.2d at 999). The most important consideration is whether the matters referred are core or non-core. *S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996).

**I.      MANDATORY WITHDRAWAL**

To invoke mandatory withdrawal under 28 U.S.C. § 157(d), a proceeding must involve *both* an issue under title 11 *and* other laws of the United States regulating organizations or activities affecting interstate commerce. While adjudicating all nine of the Trustee's claims requires analysis of both bankruptcy and non-bankruptcy federal law, most of the individual claims only require one or the other. The Court interprets § 157(d) to apply to distinct claims, not the entire proceeding (the statute states that a proceeding may be withdrawn in whole or in part). In general, the parties ignore the requirement that a claim must involve both bankruptcy and non-bankruptcy federal law. Baker identifies only one issue of two claims potentially invoking bankruptcy and non-bankruptcy federal law: whether *in pari delicto* bars the Trustee's RICO claims. (ECF No. 18 at 6).

Even if a claim involves both bankruptcy and non-bankruptcy federal law relating to organizations or activities affecting interstate commerce, the claim must present "substantial and material questions" of non-bankruptcy federal law. "Substantial and material questions" require an interpretation of the federal law, not a "mere application." *Benjamin*, 2021 WL 3861615, at *2 (quoting *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996)) (internal quotation marks omitted); *see also Levine v. M & A Custom Home Builder & Dev., LLC*, 400 B.R. 200, 203 (S.D. Tex. 2008) (Rosenthal, J.) ("Courts generally interpret the mandatory withdrawal provision restrictively, granting withdrawal of the reference when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law."). Novelty alone does not present a "substantial and material" question of non-bankruptcy law. *Vicars*, 96 F.3d at 954 (providing that the legal question "must involve more than mere application of existing law to new facts.").

Baker's *in pari delicto* argument fails because Baker has not identified what "substantial and material" interpretation of non-bankruptcy federal law is required. This Court has previously ruled that *in pari delicto* may not be a bar to a bankruptcy trustee:

> [E]ven when parties are *in pari delicto,* 'relief will sometimes be granted if public policy demands it.' . . . Insiders fail to cite any authority supporting the proposition that *in pari delicto* bars a Trustee from asserting claims against Insiders for their wrongful conduct *because of* the same wrongful conduct. The Trustee is not asserting claims against third-parties for injuries arising from Insiders' wrongful conduct. The Trustee is asserting claims against the very Insiders for their own wrongful conduct. No case, logic, or equitable proposition supports the conclusion that insiders of a bankrupt corporation can insulate themselves from liability by virtue of the illegal character of their conduct. Granting Insiders relief based on *in pari delicto* would directly oppose *in pari delicto's* purpose of denying assistance to wrongdoers. The Court denies Insiders' *in pari delicto* defense. . . . [And regarding certain lenders' *in pari delicto* defense], consideration of the equities and public policy may exempt the Trustee from *in pari delicto's* application. The Trustee may be able to demonstrate that any recovery would benefit only innocent creditors, not the wrongdoers.

*Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 748–49 (Bankr. S.D. Tex. 2008) (quoting *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 151 (Tex. 1947)); *see also Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009). Moreover, Baker only references that the Trustee brings the claims in the shoes of Alliance. (ECF No. 18 at 6). Baker misses that the Trustee also stands in the shoes of the Test Strip Manufacturers—against whom there are no allegations of fault or bad behavior—with regard to the assigned claims. (*See, e.g.*, ECF No. 1 at 3, 101).

The parties' arguments that focus on whether the Court must consider "substantial and material" questions of law concerning organizations or activities affecting interstate commerce generally miss the gating issue that the claims must involve both bankruptcy and non-bankruptcy federal law. For the one issue that may involve both bankruptcy and non-bankruptcy federal law, Baker does not identify any "substantial or material" questions of non-bankruptcy federal law.

The request for mandatory withdrawal should be denied. *See Benjamin*, 2021 WL 3861615, at *3 (concluding that the district court was not required to withdraw a proceeding because the Court did not need to "interpret federal non-bankruptcy law or undertake [a] complicated analysis of unresolved [federal] regulations.").

## II.   PERMISSIVE WITHDRAWAL

The parties agree that permissive withdrawal is appropriate at some point. Baker requests that the Bankruptcy Court permissively withdraw now, and the Trustee requests that the Bankruptcy Court withdraw once the case is trial-ready. (ECF Nos. 18 at 8; 24 at 11). However, the decision to withdraw this reference, as well as the timing of withdrawal are decisions committed to the District Court. 28 U.S.C. § 157(d); FED. R. BANKR. P. 5011(a). Here, withdrawal of the reference is appropriate. The six considerations that guide the withdrawal decision are: (1) "whether the proceeding is core or non-core"; (2) whether the parties are entitled to a jury trial; (3) "reducing forum shopping"; (4) "promoting uniformity in the bankruptcy administration"; (5) "conservation of the debtors' and creditors' resources"; and (6) "expediting the bankruptcy process." *Benjamin*, 2021 WL 3861615, at *3 (citing *Holland*, 777 F.2d at 999).

### A.   The Trustee Asserts Mostly Non-Core Claims

Of the nine claims alleged in the Complaint, only two are core matters under 28 U.S.C. § 157(b)(2). (ECF No. 1 at 78–101). The Trustee's avoidance claim is core under § 157(b)(2)(F). The Trustee's disgorgement claim is core, at least in part, under § 157(b)(2)(E). The remaining claims arise under Washington, D.C., Utah, Delaware, Texas, or non-bankruptcy federal law, and they do not arise from bankruptcy rights or implicate the bankruptcy process. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could

arise only in the context of a bankruptcy case."). The Court could not statutorily enter a final order disposing of these remaining claims. 28 U.S.C. § 157(c). Because non-core matters predominate this adversary proceeding, withdrawal is appropriate. *Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 392 (S.D. Tex. 2009) ("Though the complaint may present both core and non-core claims, the Court finds that the core versus non-core permissive withdrawal factor favors withdrawal. . . . Even if the core claims are asserted, they will likely be claims for legal fees that will be ancillary to resolution of Plaintiffs' non-core claims.").

### B. The Trustee Demanded a Jury Trial on All Claims

The Trustee has demanded a jury trial and disclaimed consent to a bankruptcy court trial of her claims. (ECF No. 1 at 102). Baker does not challenge the Trustee's jury demand, and it asserts its own jury trial right while specifically disclaiming consent to any final orders or judgments by the Bankruptcy Court. (ECF No. 18 at 12).

A jury right attaches to "controvers[ies]" that seek enforcement of statutory rights that arise from common-law analogues. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989); *see also Levine*, 400 B.R. at 205 (Rosenthal, J. adopting the bankruptcy court's report and recommendation to withdraw reference). A suit at common law generally involved the assertion of "legal rights" as opposed to "equitable rights." *Granfinanciera*, 492 U.S. at 42. An attendant monetary remedy "strongly indicates" that a claim is legal, not equitable, in nature and accompanied by a jury right. *Arena Energy, LP v. W&T Offshore, Inc. (In re Arena Energy, LP)*, No. 20-34215, 2021 WL 8016713, at *4 (Bankr. S.D. Tex. Apr. 27, 2021) (citing *Levine*, 400 B.R. at 205). Moreover, a jury right may attach to actions arising under the Bankruptcy Code, if those actions are based on common-law rights—specifically, preference and fraudulent transfer actions. *Granfinanciera*, 492 U.S. at 43, 49.

Here, the Trustee seeks monetary relief, as opposed to equitable relief, on each of her claims. The claims arise from legal rights rather than equitable rights. A jury right attaches to most, if not all, of the Trustee's claims. *See Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974) ("[I]f this legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact."). The Trustee's and Baker's entitlement to a jury trial supports withdrawal of this adversary proceeding's reference. *Arena*, 2021 WL 8016713, at *5.

    **C.**    **There is No Evidence of Forum Shopping**

The request for withdrawal is not an attempt to find "a more favorable decision maker." *Id.* (quoting *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 769 (S.D. Tex. 2007)). Instead, the request is simply aimed at streamlining this dispute's resolution, as this Court is unable to finally adjudicate the majority of the Trustee's claims. A risk of forum-shopping does not undermine the request for withdrawal.

    **D.**    **The Remaining Considerations Suggest Withdrawal is Appropriate**

The remaining considerations focus on how this proceeding's withdrawal could affect the uniform and efficient administration of Alliance's bankruptcy.

The Court's familiarity with the main bankruptcy case and its underlying facts suggests that the Court's retention of this proceeding will promote uniformity. *Arena*, 2021 WL 8016713, at *5 (quoting *Johnson v. Williamson (In re British Am. Props. III, Ltd.)*, 369 B.R. 322, 327 (Bankr. S.D. Tex. 2007)) ("If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration."). However, Alliance's Plan was confirmed over three years ago. (Case No. 17-32186, ECF No. 1267). And the Trustee has not identified any issues she might face distributing

recoveries should she succeed on her claims before the District Court. Thus, the District Court's withdrawal of this proceeding will have little effect on the uniform administration of Alliance's estate. *See Arena*, 2021 WL 8016713, at *5.

Similarly, the District Court's withdrawal of this case now or following this Court's resolution of all pre-trial matters will not result in inefficiency. Of course, this Court's familiarity with the facts underlying the Trustee's claims could enable the Court to resolve any pre-trial disputes more efficiently. Nevertheless, this case has yet to progress beyond the Rule 12 stage, leaving much to be done before the District Court tries the case. Baker only filed its motion to dismiss on January 13, 2023. (*See* ECF No. 31). At bottom, the timing of withdrawal will not inject inefficiency into this dispute's resolution. *See, e.g., British Am. Props.*, 369 B.R. at 328 (recognizing that a proceeding's lack of progress before the bankruptcy court belies withdrawal-related efficiency concerns).

Finally, this proceeding's withdrawal will not affect the pace at which Alliance's bankruptcy case is resolved. Alliance's Plan was confirmed over three years ago, and Alliance's retained assets transferred to the Liquidating Trust. (Case No. 17-32186, ECF No. 1267 at 24–25). The Trustee's claims are assets of the Liquidating Trust and any recovery based on those claims will be distributed to the Liquidating Trust beneficiaries. That recovery will be delayed so long as the Trustee's claims remain unliquidated. But withdrawal at this early stage will not hinder the claims' liquidation (or reduction to judgment), much less confirmation of Alliance's Plan. *See, e.g., Arena*, 2021 WL 8016713, at *6 ("Because [the debtor's] bankruptcy case is closed and its chapter 11 plan is confirmed, resolution of this adversary proceeding in the district court cannot delay administration of the bankruptcy case.").

Given these considerations, the District Court should withdraw this adversary proceeding. However, the Court agrees with the Trustee that withdrawal should be delayed until the case is ready for trial, leaving this Court to resolve all pre-trial matters. This Court's familiarity with the facts underlying the Trustee's claims supports the Trustee's request to delay this proceeding's withdrawal. *See id.* at *3 ("Bankruptcy courts frequently operate as magistrate courts with respect to pre-trial matters in litigation proceedings that involve bankruptcy issues when the bankruptcy court is familiar with the case and bankruptcy issues predominate." (quoting *Off. Comm. of Unsecured Creditors of KP Eng'g v. Steele (In re KP Eng'g, LP)*, No. 19-34698, 2020 WL 5947916, at *2 (Bankr. S.D. Tex. Aug. 27, 2020)) (internal quotation marks omitted)). Moreover, retaining this case pre-trial would be consistent with the District Court's ruling on the Court's report and recommendation in *Shaprio v. Brown & Fortunado, P.C.* (Adv. Pro. No. 21-3936, ECF No. 55).

## CONCLUSION

The District Court should withdraw this adversary proceeding's referral to this Court. Withdrawal should be delayed until the case is trial-ready.

SIGNED 01/19/2023

_____
Marvin Isgur
United States Bankruptcy Judge